# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DONALD COLEMAN,

    *Petitioner,*

vs.

HOWARD SKOLNIK, *et al.*,

    *Respondents.*

2:07-cv-00881-RCJ-GWF

ORDER

    This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on a *sua sponte* inquiry into whether the petition is time-barred because it was not filed within the one-year limitation period in 28 U.S.C. § 2244(d)(1). This order follows upon the Court's prior show cause directives (## 14 & 51, at 23) and petitioner's response (#52) thereto.

## Background

    Petitioner Donald Coleman was convicted, pursuant to a jury verdict following a second trial, of first degree murder with the use of a deadly weapon and first degree kidnaping. He is serving consecutive life sentences with the possibility of parole.

    The second judgment of conviction was entered on or about March 18, 1994. The Supreme Court of Nevada entered an order dismissing Coleman's direct appeal on the merits and upholding the conviction on December 19, 1995. #13, Ex. 230. Coleman did not file a petition for a writ of *certiorari* with the United States Supreme Court. The time for seeking *certiorari* expired on or about March 18, 1996.

Meanwhile, during the pendency of the direct appeal, petitioner mailed a state post-conviction petition for filing on or about September 25, 1994. #13, Ex. 225.

On or about June 6, 1996, petitioner mailed a second state post-conviction petition for filing. The second petition was essentially identical to the first 1994 petition, which still was pending. #13, Ex. 234, at 12.

On July 1, 1996, the state district court denied both petitions. The Supreme Court of Nevada affirmed, and the remittitur issued on July 16, 2001. #13, Exhs. 236, 244 & 246.

Nearly six years later, on or about June 28, 2007, petitioner mailed his federal petition for filing in this matter.

### Discussion

The Antiterrorism and Effective Death Penalty Act ("AEDPA") adopted a one-year limitation period for federal habeas petitions. The Act became effective on April 24, 1996. Petitioner's conviction became final prior to the effective date of the Act, on or about March 18, 1996, when the time for seeking *certiorari* expired.

Because petitioner's conviction became final before the effective date of the AEDPA, the one-year statute of limitation for the filing of his federal habeas petition began to run, unless tolled, after the effective date of the Act, *i.e.*, on April 24, 1996. *See, e.g., Gaston v. Palmer*, 417 F.3d 1030, 1033 (9th Cir. 2005).

However, under 28 U.S.C. § 2244(d)(2), the federal one-year limitation period is statutorily tolled during the pendency of a properly filed application for state post-conviction relief. Petitioner's 1994 state post-conviction petition was pending on and after April 24, 1996, continuously through to the July 16, 2001, date on which the remittitur was issued following the Nevada Supreme Court order affirming the denial of the 1994 and 1996 petitions.

The federal one-year limitation period therefore began running after the conclusion of the state post-conviction proceedings on July 16, 2001. Unless otherwise tolled, the one-year limitation period expired one year later on or about July 16, 2002.

The federal petition in this matter was not mailed for filing until June 28, 2007, nearly five years after the limitation period expired, absent tolling.

Thus, on the face of the record, the petition is subject to dismissal as time-barred under Section 2244(d)(1), unless the limitation period is otherwise tolled.

The sole basis for avoiding the time bar advanced by petitioner is a claim of actual innocence.

The Ninth Circuit's recent decision in *Lee v. Lampert*, 610 F.3d 1125 (9th Cir. 2010), of course would conclusively resolve this issue adversely to petitioner. The Ninth Circuit held in *Lee* that a claim of actual innocence does not provide a basis for avoiding the federal time bar under § 2244(d)(1). In reaching this holding, the Ninth Circuit followed authority from the First, Fifth, Seventh and Eighth Circuits, declining to follow authority to the contrary from the Sixth Circuit.

The petitioner-appellee in *Lee* has filed a petition for rehearing and rehearing *en banc*, however. Review of the Ninth Circuit's online docket sheet in *Lee* reflects that the petition remains under consideration at this time. If rehearing *en banc* were granted, the panel opinion potentially would cease to have precedential value pending *en banc* review. *Cf. Marley v. United States*, 567 F.3d 1030, 1037 (9th Cir. 2009)(typical *en banc* rehearing order providing that the panel opinion shall not be cited as precedent except to the extent adopted by the *en banc* court).

On the facts presented in this case, this Court would reach the same decision on the time-bar issue even if, *arguendo,* the currently viable holding of the *Lee* panel opinion later were overturned on *en banc* or *certiorari* review. Petitioner cannot establish actual innocence in this case under governing precedent, which is grounded in procedural default doctrine case law, even if actual innocence otherwise is available to overcome the federal time bar.

In order to satisfy the actual innocence gateway, where applicable, a petitioner must come forward with new reliable evidence that was not presented at the trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See, e.g., Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). In this regard, "actual innocence" means actual factual

1 innocence, not mere legal insufficiency. See, e.g., Sawyer v. Whitley, 505 U.S. 333, 339, 112
2 S.Ct. 2514, 2518-19, 120 L.Ed.2d 269 (1992). The court "must assess the probative force
3 of the newly presented evidence in connection with the evidence of guilt adduced at trial," and
4 "may consider how the timing of the submission and the likely credibility of the affiants bear
5 on the probable reliability of that evidence." Schlup, 513 U.S. at 332, 115 S.Ct. at 869.

6     In the present case, petitioner, through appointed federal habeas counsel, sought
7 federal habeas discovery to establish actual innocence. Petitioner sought, *inter alia*, to
8 conduct DNA testing of two small blood stains found at the time of the initial investigation on
9 the inside lining of a jacket worn by another male, Jermaine Robinson, who had been with
10 petitioner and the victim, Jodette Godfrey, during the time leading up to the shooting. This
11 Court exhaustively reviewed the relevant trial evidence together with the facts pertinent to the
12 discovery requests. Following this extensive review, the Court concluded, *inter alia,* that the
13 discovery sought would not have material exculpatory significance. See #51.

14     For example, with regard to the blood stains, the forensic serology expert testified at
15 trial that the stains were not from high velocity blood spatter as from a gunshot. The expert
16 testified that she examined the jacket for high velocity blood spatter. She testified, without
17 equivocation: "I did not find any high velocity blood spatter." Even if the *non-spatter* stains
18 on the inside lining of the jacket *arguendo* had been from the victim, there was testimony at
19 trial tending to establish that Godfrey had been physically abused by petitioner on the day of
20 the murder and that Robinson was in close physical proximity to her during the time leading
21 up to the shooting. Accordingly, proving that the victim's non-spatter blood was transferred
22 to Robinson's jacket at some point would not establish that Robinson shot the victim. As the
23 Court observed in the prior order, "petitioner must support an inference that Robinson *shot*
24 Godfrey, not merely that he *arguendo* had her blood transferred to his jacket from some other
25 contact." Even with the discovery sought, petitioner would not be able to do so. Petitioner
26 accordingly would not be able to demonstrate through DNA testing of the non-spatter blood
27 stains that it is more likely than not that no reasonable juror would have found him guilty
28 beyond a reasonable doubt. See #51, at 12-16.

Petitioner's response (#52) to the Court's show cause directive does not persuasively establish that petitioner would be able to satisfy the actual innocence gateway if otherwise applicable. The exculpatory inferences that petitioner explores in the show cause response also were explored at trial and rejected by the jury. Robinson was with petitioner and Godfrey until she broke and ran trying to escape. The critical question was who chased her down and shot her. Establishing that Robinson had two small blood stains of unknown duration on the inner lining of his jacket that did not come from high velocity blood spatter would not answer that question even if, *arguendo*, the blood came from Godfrey. While petitioner maintains that there was no direct evidence that Godfrey bled on Robinson's jacket prior to the shooting, testimony reflected that petitioner had given Godfrey, *inter alia,* a bleeding busted lip earlier in the day and that petitioner and Robinson walked Godfrey locked arm-in-arm into an apartment building a short time before she broke and ran. See #51, at 4-7. Again, petitioner would not be able to demonstrate through DNA testing of the non-spatter blood stains that it is more likely than not that *no* reasonable juror likely would have found him guilty beyond a reasonable doubt, which is the steep hill that he faces in seeking to pass through the actual innocence gateway.

A certificate of appealability will be denied, as even if the *Lee* panel opinion were later overturned on *en banc* or *certiorari* review, jurists of reason would not find this Court's dismissal of the petition as time-barred to be debatable or wrong on the facts presented.

IT THEREFORE IS ORDERED that the petition shall be DISMISSED with prejudice as time-barred.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: February 4, 2011

ROBERT C. JONES
United States District Judge

-5-